UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VIRGIL GREEN,

        Plaintiff,

v.

TYNNE BEAUDRY et al.,

        Defendants.
_____/

Case No. 2:19-cv-130

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

    **I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MDOC employees at

URF: Housing Unit Officers Tynne Beaudry and Darnel Wagner and Classification Director Denise Peller.

On June 23, 2018, Defendant Wagner "hired" Plaintiff to work as a porter. Wagner informed Plaintiff of his duties, workdays, and hours. Initially, Plaintiff was assigned to second shift (4:00 p.m. to midnight) on Mondays and Tuesdays, first shift (8:00 a.m. to 4:00 p.m.) on Wednesdays and Thursdays, and on either shift, as needed, on Fridays.

On February 4, 2019, Defendant Beaudry demanded that Plaintiff begin his second-shift work at 3:45 p.m. Plaintiff asked Beaudry if Plaintiff would be paid for 15 minutes of overtime. Beaudry became irate and informed Plaintiff: "you are required to work whenever I tell you to." (Compl., ECF No. 1, PageID.5.)

The next day, Defendant Beaudry again demanded that Plaintiff begin his shift at 3:45 p.m. Although Beaudry made the demand, Plaintiff never received any notice from the classification director that his hours had been changed. After Beaudry made the same demand on February 11, Plaintiff filed a grievance against her complaining that she was abusive and had violated policy directives.

On February 18, Plaintiff reported to work at 4:30.[1] Defendant Beaudry asked Plaintiff why he had not reported at 3:45 as she had previously demanded. Plaintiff replied that his work detail starts when second shift starts: at 4:00 p.m. Beaudry sent Plaintiff back to his cell and informed Plaintiff that someone else would do Plaintiff's porter work that day.

Later that day, Defendant Beaudry forced Plaintiff to sign paperwork which required Plaintiff to begin working at 3:45 p.m. The paperwork indicated it would be effective as

---

[1] Plaintiff notes that 4:30 p.m. was the time that Defendant Beaudry "called out" the second shift porters to begin their work. (Compl., ECF No. 1, PageID.6.) Plaintiff also notes that formal count time begins at 4:00 p.m. and that prisoners are not allowed off their beds until cleared. (*Id*., PageID.5.) That appears to be the reason that Beaudry did not call the porters out until 30 minutes after the shift commenced.

2

of February 1, 2019. The documented change in work hours, according to Plaintiff, was never noted on his work detail.

On February 19, Plaintiff reported to work at 4:30. Beaudry again sent Plaintiff back to his cell.

In his previous months on the job, although Plaintiff was scheduled as an extra on either first or second shift for Fridays, he had never received a work detail. Nonetheless, Plaintiff was always paid as if he had worked five days.

On Friday, February 22, for the first time, Plaintiff received a "Friday" work detail. Rather than showing hours of 8:00 a.m.-4:00 p.m. or 4:00 p.m.-midnight, as assigned by staff, the detail showed hours of 8:00 a.m.-4:00 p.m or 2:00 p.m. to 10:00 p.m. as assigned by staff. That day, Beaudry had Plaintiff clean the snow from the housing unit doorway at 3:45 p.m. and 8:45 p.m.

On February 25, 2019, Plaintiff received a work detail that changed his Monday/Tuesday hours to 2:00 p.m. to 10:00 p.m. as well.

On March 4, 2019, Defendant Wagner gave Plaintiff his payroll slip for February. Plaintiff's pay was short by $2.62; he had been paid for 18 days rather than 20 days. Plaintiff complained to Defendant Wagner. Wagner explained that Beaudry had instructed that Plaintiff was not to be paid for two days of work. Plaintiff later discovered that the two days for which he was not paid were February 18 and 19, the days Beaudry had sent Plaintiff back to his cell for not reporting at 3:45, as directed. Plaintiff filed a grievance against Beaudry for docking his pay.

The same day, Plaintiff received a "work assignment evaluation" signed by Beaudry and Defendant Peller. The work evaluation indicated that Plaintiff's work status was

changed to "30-day conditional" beginning February 19, 2019. Plaintiff filed a grievance against Beaudry for the work evaluation as well.

On March 20, Defendant Wagner informed Plaintiff that his work detail would be reduced from five days to four because "Beaudry said you refused to work on Friday as an 'Extra.'" (Compl., ECF No. 1, PageID.8.) Plaintiff replied that he had "never refused to work *during his work detail hours*[.]" (*Id.* (emphasis supplied).) Wagner became irate and stated: "leave the lobby area, that's what happens when you cry about shit." (*Id.*) Plaintiff wrote a letter of complaint to Defendant Peller and filed a grievance against Beaudry and Wagner for conspiring to retaliate against him.

On Friday, March 29, Plaintiff did not receive a work detail. He concluded that Peller had reduced his workdays in conspiracy with Beaudry and Wagner. He claims that such an action, without notice, violated his due process rights. Accordingly, he filed a grievance against Beaudry, Wagner, and Peller.

Plaintiff claims that Defendants retaliated against him for filing complaints, deprived him of workdays without due process, and conspired to take both of those actions. Plaintiff seeks a declaratory judgment finding that Defendants violated Plaintiff's rights, as well as compensatory and punitive damages of $60,000.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Due Process Violations

Plaintiff's claims that Defendants wrongfully changed his employment (changed his hours, changed his status, changed the number of days he worked), or deprived him of wages,

5

are claims that he was denied his due process rights in violation of the Fourteenth Amendment. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty or property interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the changes to his hours, his status, or the number of days he was scheduled to work.

Plaintiff claims that Defendants wrongfully took his wages for February 18 and 19. Plaintiff's claim is certainly weakened by the fact that he did not actually perform work on those

6

days; instead, Defendant Beaudry sent Plaintiff back to his cell. But, if Plaintiff had performed work and if he had a property interest in wages for that work once he had performed it, his claim would be barred under the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

*Parratt* holds that a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its

7

departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his wages if, in fact, they had been earned.

Because Plaintiff has failed to allege facts showing a liberty or property interest protected by due process or because Plaintiff's property interest in earned wages, if any such wages were in fact earned on February 18 and 19, is already protected by due process afforded by state post-deprivation remedies, he has failed to state a due process claim against Defendants.

## IV. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Protected conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the

prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Here, Plaintiff filed a number of grievances. Moreover, he voiced or wrote complaints to each Defendant. Accordingly, for purposes of this preliminary review, Plaintiff has adequately alleged protected conduct.

### B. Adverse action

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the Defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Thus, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, "'prisoners are expected to endure more than the average citizen,' and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter . . . ." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412

F.3d 693, 701 (6th Cir. 2005)). Certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Plaintiff suggests that the changes to his schedule were adverse actions. There were three such changes: (1) Beaudry's demand that Plaintiff report at 3:45 on Mondays and Tuesdays; (2) the change in the beginning and ending times of his shift on Mondays, Tuesdays, and Fridays; and (3) the reduction from a five-day work assignment to a four-day work assignment. Neither of the first two changes rise to the level of adverse action. At most, Plaintiff's allegations show that they are insignificant shifts in the timing of his work obligations.

Taking Plaintiff off the Friday work rotation, and the resulting loss of income, however, is the sort of deprivation that might deter an ordinary person from exercising his First Amendment rights. Even though Plaintiff has no right to prison employment, taking away some or all of his existing employment might still constitute adverse action. *See Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (holding that even absent a constitutional right to avoid segregated housing or prison transfers, placement in segregation or transfer might still be adverse action); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (concluding that a threat to have the plaintiff "moved out of the unit so that he would lose his job" was "'capable of deterring a person of ordinary firmness' from exercising protected rights, the standard for adverse action."); *Dobbins v. Craycraft*, 423 F. App'x 550, 553 (6th Cir. 2011) (retaliation claim based on the loss of a prison job permitted to go forward).

Plaintiff also claims that docking his pay for two days and placing Plaintiff on conditional work status for 30 days were adverse actions. Neither claim has merit. Plaintiff's allegations make clear that he did not work on February 18 or 19. Not paying a person when they

10

did not work would not deter an ordinary person from exercising his or her First Amendment rights. Similarly, when an ordinary person refuses to report to work at the time demanded by his employer, that person's placement on a conditional status would not deter him or her from exercising his or her First Amendment rights.

### C. Retaliatory motive

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff's allegations of retaliatory motive with respect to Defendant Beaudry and Peller are entirely conclusory. With respect to those defendants, the only fact Plaintiff alleges that might permit the inference that they acted in retaliation is the sequence of events, i.e., the alleged adverse action was subsequent to the alleged protected conduct. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). The Sixth Circuit, however, has

been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). Thus, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Rather, the evidence regarding temporal proximity must be "significant enough." *Muhammad*, 379 F.3d at 418. Conclusory and ambiguous allegations will not suffice. *Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich., Jan. 16, 2010).

Simply noting that the adverse action occurred some time following the filing a grievance, as Plaintiff does here, is particularly unrevealing because Plaintiff is a "prolific grievance filer[.]" *Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Plaintiff describes a sequence of events that augurs against the inference of a retaliatory motive. The sequence begins with Defendant Beaudry's demand that Plaintiff report for work at 3:45. Plaintiff responded by filing a grievance. The demand cannot be retaliatory because it precedes the grievance.

A week later, when Plaintiff refused to report at the time required by Defendant Beaudry, Beaudry sent Plaintiff back to his cell. To infer that Beaudry was motivated to send Plaintiff away simply because that event occurred subsequent to Plaintiff's filing of a grievance is not reasonable.

On March 4, three weeks after Plaintiff's grievance and two weeks after Beaudry sent Plaintiff back to his cell for being tardy on consecutive days, Plaintiff learned that Beaudry

acted to dock Plaintiff's pay for the two days Plaintiff did not work. Plaintiff offers nothing more than that temporal relationship to support the inference that Beaudry was motivated by retaliation for Plaintiff's grievance. To infer from the temporal proximity of those events that Beaudry was motivated to dock Plaintiff's pay by retaliation, and not the fact that Plaintiff did not actually work those days, is not reasonable. Plaintiff invites the same inference with regard to his placement on conditional status. The sufficiency of his allegations depends on inferring that Beaudry's evaluation that resulted in Plaintiff's conditional status was motivated by Plaintiff's grievance rather than by Plaintiff's refusal to show up at the time requested. The inference urged is not reasonable.

Plaintiff grieved Beaudry again twice on March 4: first for docking his pay and then for putting Plaintiff on conditional status. Two weeks after those grievances, on March 20, Wagner informed Plaintiff that his five-day detail would be reduced to a four-day detail—that Plaintiff would be losing his shift as an extra on Fridays. Wagner informed Plaintiff that he was losing Fridays because, according to Beaudry, Plaintiff had refused to work on Friday (presumably, March 1, 8, or 15, because Plaintiff alleges that when he worked on Friday, February 22, it was the first time he had ever been asked to work on a Friday).

Plaintiff does not allege that he never refused to work on a Friday. Instead, he elusively represents that he never refused to work *during his work detail hours*. In light of the differing perspectives between Plaintiff and Beaudry regarding the hours Plaintiff was supposed to work, his representation does not contradict Beaudry's statement regarding Plaintiff's refusal to work on a Friday.

Moreover, Plaintiff does not allege that Beaudry decided to change Plaintiff's schedule. Indeed, he does not allege that Wagner changed his schedule either. Instead he claims

13

that Defendant Peller changed his schedule. (Compl., ECF No. 1, PageID.9) ("On March 20, 2019, . . . [I] realized that Defendant Peller had reduced [my] work days . . . ."). Yet there is nothing in the complaint to support any inference that Peller was motivated by retaliatory animus arising from Plaintiff's filing of grievances against Beaudry days and weeks before. Similarly, to the extent Beaudry participated in the change, there are no facts alleged to support the inference urged by Plaintiff—that she was motivated by animus because of Plaintiff's grievances.

The only suggestion that any action by any of the Defendants was motivated by a retaliatory animus appears in a statement by Defendant Wagner following Plaintiff's vocal protest against the one-day reduction in his work schedule. Plaintiff reports that Wagner stated: "leave the lobby area, that's what happens when you cry about shit." (Compl., ECF No. 1, PageID.8.) Plaintiff invites the Court to infer that "what happened" was his schedule was reduced and his "crying" was the filing of grievances. Wagner's statement is at best ambiguous. If one were to consider the importance of temporal proximity, however, the stronger inference is that "what happened" was Wagner ordered Plaintiff to leave the lobby because of Plaintiff's "crying" –his protest that he never refused work during his work detail hours. To the extent Plaintiff's protest was protected conduct, being compelled to leave the lobby would certainly not rise to the level of adverse action.

Certainly, it is possible that Wagner's words were intended to convey the meaning that Plaintiff suggests. But, the allegation of retaliatory motive is otherwise entirely conclusory and Wagner's words could also be entirely consistent with legal conduct. Under those circumstances, *Iqbal* instructs "the complaint [is] close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to

relief." *Iqbal*, 556 U.S. at 696 (internal quotation marks omitted). Plaintiff's complaint does not offer any further factual enhancement to bring it over the line. Accordingly, he has failed to state a claim for First Amendment retaliation.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, Plaintiff's motion for substitute service of the complaint (ECF No. 3) will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and a judgment consistent with this opinion will be entered.


Dated: August 20, 2019　　　　　　　　　　　　/s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE